**08 CV 4046**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VENETIA KAPERNEKAS

                Plaintiff,

-against-

UDO FRITZ-HERMANN BRANDHORST

-and-

THE BRANDHORST FOUNDATION

                Defendants.

CIVIL ACTION

COMPLAINT

**JURY TRIAL DEMANDED**



RECEIVED APR 29 2008 U.S.D.C. S.D.N.Y. CASHIERS

Plaintiff, by her attorneys, brings this civil action for damages and injunctive relief against the defendants, and demanding trial by jury, complains and alleges as follows:

### THE PARTIES

1. Plaintiff, Venetia Kapernekas ("plaintiff" or "Kapernekas"), is an adult individual residing at 104 Wooster Street, 3 N, New York, NY 10012.

2. Defendant, Udo Fritz-Hermann Brandhorst ("defendant" or "Brandhorst"), is a German citizen and resident of Bavaria, Germany, with a residence located at Hittostrasse 20, Hitterkirchen Bernau 83233, Bavaria.

3. Upon information and belief, defendant, the Brandhorst Foundation is a foundation located in Cologne, Germany with an office located at Brandhorst Sammlung, Haydenstrasse 15, Cologne, Germany D50935.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this is a civil action between a party who is a citizen of a State and parties who are citizens or subjects of a foreign state and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this litigation occurred here.

## MATERIAL FACTS

6. Kapernekas is the sole proprietor of a contemporary art gallery located at 526 W 26 Street, Suite 814, New York, New York 10001.

7. Brandhorst is a highly successful investor and an internationally prominent art collector.

8. The Brandhorst Foundation is an entity created by Brandhorst to fund, hold and oversee control of his art collection, known as the Brandhorst Collection.

9. Brandhorst and the Brandhorst Foundation have arranged for the State of Bavaria, Germany to build a major art museum in Munich to house the Brandhorst Collection.

10. Kapernekas and Brandhorst first met in November, 1997, developed a personal relationship, and have one child together.

11. In the Spring of 2002, Brandhorst offered to help Kapernekas invest in contemporary art.

12. Kapernekas was aware of the fact that Brandhorst was a successful investor, particularly as an expert in purchasing, investing and collecting contemporary art, the prices for

which were escalating rapidly at the time.

13. Kapernekas agreed to provide Brandhorst with her funds to invest in contemporary art on her behalf.

14. Kapernekas relied upon Brandhorst's expertise in deciding to permit him to use her funds to invest on her behalf and she hoped to obtain a substantial return on her investment.

15. In or around June, 2002, and at the express request of Brandhorst, Kapernekas transferred $825,416.83 (hereafter "the funds") from her bank account to an account managed by Chase Bank on behalf of the Gagosian Gallery, located in Manhattan, New York. The sole purpose of this transfer was to permit Brandhorst to purchase contemporary art at the Gagosian Gallery as an investment for Kapernekas.

16. Upon information and belief, Brandhorst used the funds to purchase a piece of contemporary artwork from the Gagosian Gallery in New York, a business through which Brandhorst purchased significant and valuable pieces of artwork.

17. Brandhorst did not disclose the identity of the artwork to Kapernekas but assured her that it was a good investment.

18. Contemporary artwork of the type selected and purchased by Brandhorst from the Gagosian Gallery in New York has greatly increased in value over the last 5 – 8 years.

19. Kapernekas periodically inquired about the identity of the artwork that she had purchased and Brandhorst told her not to worry about it. In light of Brandhorst's expertise, as well as the personal nature of their relationship, Kapernekas initially concluded that Brandhorst was waiting until the artwork significantly appreciated in value before disclosing to Kapernekas how much her investment had yielded.

20. On or about February 2, 2007, and after her prior inquiries had been rebuffed, Kapernekas, through her attorneys, made a demand for the artwork during a meeting with an attorney at the Blank Rome firm who represents Brandhorst.

21. On or about February 2, 2007, Brandhorst, through his lawyer, refused to confirm the identity of the piece or the ownership interest of Kapernekas in the piece.

22. Upon information and belief, the artwork has so greatly increased in value that Brandhorst no longer wants to surrender it to Kapernekas or permit her to share in the proceeds of its sale.

23. Upon information and belief, Brandhorst may have also decided to exhibit the artwork as a featured exhibit in the new museum that is opening in Munich, notwithstanding the fact that he lacks good title to the piece and notwithstanding the fact that the piece is owned by Kapernekas.

## Count I

(Replevin – Against Brandhorst and the Brandhorst Foundation)

24. Plaintiff repeats and realleges the allegations in the preceding paragraphs of the complaint as if fully set forth at length herein.

25. Kapernekas is the rightful owner of the art piece because it was purchased using the funds that she wired to the Gagosian Gallery in New York at the request of Brandhorst.

26. On February 2, 2007, Kapernekas demanded the art piece and Brandhorst refused to surrender the piece to Kapernekas.

27. The art piece is valuable and unique and should be immediately returned to Kapernekas.

28. The right of Kapernekas to possess the art piece is superior to any right claimed by Brandhorst or the Brandhorst Foundation because the art piece was purchased on behalf of Kapernekas using the funds that she wired to the Gagosian Gallery in New York.

## Count II

(Conversion – Against Brandhorst and the Brandhorst Foundation)

29. Plaintiff repeats and realleges the allegations in the preceding paragraphs of the complaint as if fully set forth at length herein.

30. The parties understood and agreed that Brandhorst would purchase the art piece on behalf of Kapernekas as an investment.

31. Brandhorst did in fact purchase the art piece on behalf of Kapernekas as an investment.

32. Despite demand, Brandhorst has refused to surrender the piece to Kapernekas and has also refused to confirm its identity or precise whereabouts.

33. Brandhorst has converted property belonging to Kapernekas, and his refusal to return the property to Kapernekas is unlawful and gives rise to this claim for conversion.

34. Kapernekas is entitled to damages against Brandhorst and the Brandhorst Foundation measured by the current market value of the art piece, all in an amount to be determined at trial but in no event less than $825,416.83, plus costs, interest, and attorney's fees.

## Count III

(Breach of Fiduciary Duty – Against Brandhorst and the Brandhorst Foundation)

35. Plaintiff repeats and realleges the allegations in the preceding paragraphs of the Complaint as if fully set forth at length herein.

36. Brandhorst offered to invest the funds in a contemporary art piece and Kapernekas accepted the offer.

37. Kapernekas entrusted Brandhorst with the funds for investment purposes and Brandhorst used the funds to invest in an art piece.

38. In offering to invest, and subsequently investing the funds, Brandhorst undertook a duty of good faith and loyalty to Kapernekas.

39. Brandhorst's failure and refusal to identify the art piece and surrender it to Kapernekas upon demand constitutes a breach of the duties of good faith and loyalty owed to Kapernekas.

40. As a result of Brandhorst's breach of his duties, Kapernekas is entitled to damages against Brandhorst measured by the current market value of the art piece, all in an amount to be determined at trial but in no event less than $825,416.83, plus costs, interest, and attorney's fees.

### Count IV

(Unjust Enrichment – Against Brandhorst and the Brandhorst Foundation)

41. Plaintiff repeats and realleges the allegations in the preceding paragraphs of the complaint as if fully set forth at length herein.

42. At the request of Brandhorst, Kapernekas transmitted the funds to the Gagosian Gallery in New York and Brandhorst used the funds to invest in a piece of contemporary art on behalf of Kapernekas.

43. Brandhorst appreciated, accepted and retained the benefit of the piece and his wrongful refusal to surrender the piece to plaintiff, or to permit Kapernekas to share in the proceeds from a sale of piece, has unjustly enriched Brandhorst at the expense of Kapernekas.

44. Upon information and belief, Brandhorst may also have decided to exhibit the piece as a featured exhibit in his new museum that is opening in Munich, which would further inure to the benefit of Brandhorst and the Brandhorst Foundation to the detriment of Kapernekas, who is the rightful owner of the piece.

45. Retention of the piece by Brandhorst and the Brandhorst Foundation without payment to Kapernekas would be unjust.

46. Kapernekas is entitled to damages against Brandhorst and the Brandhorst Foundation measured by the current market value of the art piece, all in an amount to be determined at trial but in no event less than $825,416.83, plus costs, interest, and attorney's fees.

**WHEREFORE** plaintiff Venetia Kapernekas prays for the following equitable and monetary relief:

AS TO COUNT I:

(a) Order defendants to identify the current location of the art piece and surrender title to the art piece to plaintiff

(b) Enjoin defendants from taking any action that would diminish the value of the art piece

(c) Order defendants to pay the costs of this action

(d) Grant plaintiff such other equitable relief as is just and proper under the circumstances.

AS TO COUNTS II, III AND IV:

(a) Order defendants to pay damages in an amount to be determined at trial but in no event less than $825,416.83, plus costs, interest, and attorney's fees.

(b) Grant plaintiff such other equitable relief as is just and proper under the circumstances.

FOX ROTHSCHILD, LLP

John A. Wait, Esq. (JW 2558)
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

OF COUNSEL:
Robert E. Goldman
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
*ATTORNEYS FOR PLAINTIFF:*
**VENETIA KAPERNEKAS**