IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VENETIA KAPERNEKAS<br><br>Plaintiff,<br><br>-against-<br><br>UDO FRITZ-HERMANN BRANDHORST<br><br>-and-<br><br>THE BRANDHORST FOUNDATION<br><br>Defendants. | No. 08-cv-4046-(JSR) |

---

**PLAINTIFF VENETIA KAPERNEKAS' MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION OF UDO BRANDHORST TO DISMISS
THE COMPLAINT PURSUANT TO
FED.R.CIV. P. 12(b)(6)**

---

John A. Wait, Esq. (JW 2558)
Samantha H. Evans (SE 0728)
**FOX ROTHSCHILD LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

[Additional Counsel on Signature Page]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………...i

I.　　INTRODUCTION…………...……………………………………………:…..…1

II.　　PROCEDURAL HISTORY …....……...…………………………………….…....2

III.　　STATEMENT OF FACTS…....……....…………………………...……………..……...3

IV.　　STANDARD OF REVIEW…....……...…………………………...………………...8

　　　　A.　　Fed. R. Civ. P. 12(b)(6)…..………...……………………….…..…...8

　　　　B.　　Fed. R. Civ. P. 56…..…………...…………………………..………...9

V.　　ARGUMENT…....………...………...……………………..……...……...10

　　　　A.　　Plaintiff's Claims Are Timely…..………...…..……………...……....10

　　　　　　　1.　　Counts I And II: Replevin And Conversion…..…..……...……...10

　　　　　　　2.　　Count III: Breach of Fiduciary Duty…..….…….…...…….………12

　　　　　　　3.　　Count IV: Breach of Contract –
　　　　　　　　　　(Bailment of Infinite Duration) …..……….…..………….……...13

　　　　　　　4.　　Count V: Unjust Enrichment…..………...…….….....…..……...13

　　　　　　　5.　　Count VI: Constructive Trust…..……………………..….……...14

　　　　B.　　Brandhorst Is Equitably Estopped From Asserting His Statue of
　　　　　　　Limitations Defense…..………….....….……………………..…….…...15

　　　　C.　　Plaintiffs Claims Are Not Barred By Laches…...……………….….…....16

CONCLUSION………………………………………………………………….…...20

## TABLE OF AUTHORITIES

### CASES

*Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). ...................................9

*Bd of Managers of Soho Int'l Arts Condo. v. City of New York*, No. 01 Civ. 1226, 2005 WL 1153752 * 6 (S.D.N.Y. 2005) ........................................................................19

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007 ............................................9

*Chanler v. Robers*, 275 A.D.2d 625 (1st Dept 2000) .........................................................13

*Ciccone v. Hersh*, 530 F.Supp.2d 579 (S.D.N.Y. 2008).....................................................12

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ......................................................................9

*Czartoryski-Borbon v. Turcotte*, No. 107958/97 (N.Y. Sup. Ct., N.Y. Co., April 15, 1999), N.Y. L.J., April, 27, 1999, at 27, col. 2, appeal withdrawn, 264 A.D.2d 545, 697 N.Y.S.2d 228 (1st Dep't 1999) .........................................................17

*Drain v. Paragon Capital Mgmt. Corp.*, No. 22454-2006, 2007 WL 2161904 * 7 (N.Y. Sup., Suffolk Co., July 3, 2007)...........................................................................13

E.A.M. Entertainment, Inc. v. Douglas, 361 F. Supp.2d 362, 369 (S.D.N.Y. 2005) (Rakoff, J.) ......................................................................................................................13

*Elliott v. Qwest Communications Corp.*, 25 A.D.3d 897 (3d Dep't 2006) ........................13

*Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 615 N.E.2d 985 (1993) ............................................................................................................................13

*Farkas v. Farkas*, 168 F.3d 638 (2d Cir. 1999) ................................................................15

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)................9

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985) .....................................................8

*Grynberg v.ENI S.p.A.*, 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007) ..............................14

*Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 318, 569 N.E.2d 426 (1991)..................................................................................................10, 11, 15, 16, 17

*Hoelzer v. City of Stamford, Connecticut*, 933 F.2d 1131 (2d Cir. 1991) ..................11, 16

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)...........................................................9

i

*Lambert v. Sklar*, 30 A.D.3d 564 (2d Dep't 2006) ............................................................14

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507
    U.S. 163, 164 (1993)..........................................................................................................8

*Leventritt v. Sotheby's, Inc.*, 5 A.D.3d 225, 773 N.Y.S.2d 60 (1st Dep't 2004) ..............17

*Loengard v. Santa Fe Industries*, 70 N.Y.2d 262, 519 N.Y.S.2d 801, 514 N.E.2d
    113 (1987)........................................................................................................................12

*Malmsteen v. Berdon, LLP*, 477 F.Supp.2d 655 (S.D.N.Y. Mar. 20 2007)......................13

*Martin v. Briggs*, 235 A.D.2d 192, 663 N.Y.S.2d 184, 197-98 (1st Dep't 1997) .......11, 17

*McGovern v. Solomon*, 466 F.Supp.2d 554, 558 (S.D.N.Y. 2006)(Rakoff, J.) ...............14

*Niagara Mohawk Power Corp. v. Freed*, 288 A.D.2d 818 (4th Dep't 2001) ....................13

*Pagali v. Del Re*, No. 99 Civ. 9030, 2001 WL 220013 * 7 (S.D.N.Y. 2001) .............14, 17

*Paine Webber Real Estate Securities, Inc. v. D.G. Meyer & Co.*, 835 F. Supp.
    116, 119 (S.D.N.Y. 1993).........................................................................................12, 14

*Paulemon v. Tobin*, 30 F.3d 307, 308-309 (2d Cir. 1994)....................................................9

*Peters v. Sotheby's, Inc.*, 34 A.D.3d 29, 821 N.Y.S.2d 61, 69 (1st Dep't 2006) ........16, 17

*Rabinoff*, 329 F. Supp. 841 (S.D.N.Y. 1971) ....................................................................19

*Rahanian v. Ahdout*, 258 A.D.2d 156, 694 N.Y.S.2d 44 (1st Dep't 1999) ...............11, 18

*Ross Network, Inc. v. RSM McGladrey, Inc.*, No. 19475-05, 2006 WL 1160007
    (N.Y.Sup., Erie Co. 2006) .............................................................................................14

*Sanchez v. Trustee of The University of Pennsylvania*, No. 04 Civ. 1253, 2005
    WL 94847 * 3 (S.D.N.Y. 2004)(Rakoff, J.) ..........................................................17, 19

*Sanchez v. Trustee of The University of Pennsylvania*, No. 04 Civ. 1253, 2004
    WL 1621884 * 1 (S.D.N.Y. 2004)(Rakoff, J.) ..............................................................11

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ....................................................................8

*Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 924 (S.D.N.Y. 1991) ........................18

*Sloane v. Mazzuca*, No. 04-CV-8266, Slip. Op. (S.D.N.Y. Nov. 14, 2006 ........................9

*Stellan Holm, Inc. v. Malmberg Int'l Art, AB*, No. 01 Civ. 1053, 2002 WL 392294
    (S.D.N.Y. 2002) ...........................................................................................................13

*Todd v. Exxon Corp*. 275 F.3d 191, 197 (2d Cir. 2001) ....................................................8, 9

*Wertheimer v. Cirker's Hayes Storage Warehouse*, 300 A.D.2d 117, 752
    N.Y.S.2d 295 (1st Dep't 2002) ....................................................................................17

## STATUTES

Fed. R. Civ. P. 12(b)(6)……………..……..…………………………………….8, 9, 10, 19

Fed. R. Civ. P. 56…..……......…......................................................…………...…..……9, 10, 20

N.Y. CPLR § 206(a)(1),(2) …..............................................…………....…..……12, 13

N.Y. CPLR § 213(1),(2),(4) …..…..…........................…………...…..……12, 13, 14, 15

N.Y. CPLR 213(4) ….....…...............................................…………….....…..……14

N.Y. CPLR § 214,(4)…...............................................…….………….....…..……10, 12

## SECONDARY MATERIALS

RALPH E. LERNER AND JUDITH BRESSLER, ART LAW: THE GUIDE FOR COLLECTORS,
INVESTORS, DEALERS, AND ARTISTS, 280 (Practicing Law Institute, New York City ed.,
2005)(198...……………………………………………...…………………………….16

## I.    Introduction

This case is about a billionaire who agreed to invest close to $1 million of plaintiff's money in valuable contemporary art and return to her the art or the appreciated value of her investment at a later date. Now that the art has sky rocketed in value, he has reneged on his obligations to do so.

Venetia Kapernekas seeks to recover from Udo Brandhorst the art or her fair share of the its appreciated value. Because plaintiff reasonably believed Mr. Brandhorst might argue that he purchased the art in his capacity as the president of the Brandhorst Foundation, a Bavarian public, not-for-profit foundation, she originally filed suit against that entity as well. Now that defendants have confirmed in their motion papers that the Brandhorst Foundation does not claim any interest in the art, plaintiff has filed an amended complaint that directs her claims solely to defendant Brandhorst. As a result, the only issue before the Court is whether plaintiff has adequately pled claims against Brandhorst to survive a motion to dismiss.

Defendant Brandhorst has moved to dismiss the complaint as (1) time-barred and (2) barred by the doctrine of laches.

The first argument fails because the statute of limitations for plaintiff's causes of action sounding in replevin and conversion were tolled until such time as plaintiff made a demand for the art work from Brandhorst and was refused. As alleged in the original complaint and first amended complaint, that demand and refusal occurred in February, 2007 and, therefore, these claims against Brandhorst are timely. As explained below, all of plaintiff's claims besides breach of fiduciary duty seeking monetary relief are governed by a six-year statute of limitations that could not have started running until July 1, 2002, at the earliest, when plaintiff transferred her funds to the Gagosian Gallery at the request of defendant Brandhorst.

1

Defendant's argument based on laches fails because plaintiff has pled sufficient facts in the amended complaint to support the inference that any delay in making a demand for the art was reasonable in light of her relationship with the defendant and the nature of her investment. Defendant also fails to meet his burden of establishing that he suffered any prejudice by this delay. For these reasons, defendant Brandhorst's motion to dismiss should be denied.

## II.    <u>Procedural History</u>

On April 29, 2008 plaintiff filed a four-count complaint against defendants Udo Fritz-Hermann Brandhorst and the Brandhorst Foundation. She alleged in the complaint that both defendants were liable under theories of (1) replevin, (2) conversion, (3) breach of fiduciary duty and (4) unjust enrichment, arising from defendants' refusal to identify and surrender contemporary art that defendant Brandhorst had purchased on her behalf from the Gagosian Gallery.

On June 11, 2008 defendant Brandhorst Foundation moved to dismiss the complaint on the grounds of alleged improper service, and alleged lack of personal jurisdiction. Both defendants also moved to dismiss the complaint on the grounds of statute of limitations and laches.

On June 25, 2008 plaintiff filed a first amended complaint that is directed solely to defendant Brandhorst. (A true and correct copy of the first amended complaint is attached to the declaration of John A. Wait as Exhibit "A"). The amended complaint drops the Brandhorst Foundation as a defendant, adds additional factual allegations, and asserts two additional causes of action: (1) breach of contract – bailment of infinite duration (Count IV) and (2) constructive trust (Count VI).

2

### III.    Statement of Facts

Plaintiff Venetia Kapernekas is the sole proprietor of a contemporary art gallery located at 526 W 26 Street, Suite 814, New York, New York 10001.  First Amended Complaint ("AC"), ¶ 5.  Defendant Udo Brandhorst is a highly successful investor and an international collector of fine contemporary art (*i.e.,* he purchases contemporary art by established prominent artists such as Cy Twombley, Damien Hirst and Andy Warhol, from art dealers such as the Gagosian Gallery).  Id., ¶ 6.  Kapernekas entered into a personal relationship with Brandhorst in November, 1997.  Id., ¶ 8.  She became pregnant with Brandhorst's twins in late 1998 and underwent a medical procedure at his request to terminate the twin pregnancy in January, 1999.  Id., ¶¶ 9-10.

In the Fall of 1999, for reasons partially related to the medical procedure, as well as to assist Kapernekas with her art career, Brandhorst gave Kapernekas a gift of $1,000,000.00. Specifically, he wired the funds from an account that he controlled in Luxembourg to her Swiss Bank Account No. 16 622.***.** at the Bank of Basel ("the Kapernekas Account") Id., ¶ 10.

Kapernekas had opened the Kapernekas Account in or around June, 1998, to deposit Swiss Francs she had been paid by a Swiss art dealer.  She was the sole person named on the account and it remains open today.  Id., ¶¶ 11-12.

At one point Kapernekas executed a power of attorney in favor of Brandhorst so that he could assist her in making investment decisions.  Id., ¶ 13.  She later withdrew the power of attorney on or about March 8, 2002.  Id.

In October, 2001, plaintiff give birth to Mr. Brandhorst's only child, AN.[1]  Id., ¶ 15. Since that time Kapernekas and her daughter AN have lived in an apartment owned by Mr.

---

[1] AN is a minor child whose identity is known to the parties.

Brandhorst that is located at 104 Wooster Street, New York. Id., ¶ 15.  Brandhorst also paid approximately $20,000.00 per month in child support for his daughter.  See Brandhorst's Answer to Respondent's Cross-Petition for Sole Custody and a regular Access Schedule without exhibits dated February 27, 2008, ¶ 14  (attached to the Declaration of Chaya F. Weinberg-Brodt In Support of Defendant's Motion To Dismiss The Complaint as Exhibit 7)("Brandhorst Answer").

Kapernekas initially planned to invest the $1,000,000.00 gift from Brandhorst in real estate in Manhattan. AC, ¶ 17. She explained her plan to Brandhorst as well as to bank officials assisting her with the Kapernekas Account. Id. Brandhorst responded that Kapernekas should instead invest the money in art by an established contemporary artist because she would yield a greater return on her investment. Id., ¶ 18.

Brandhorst offered to purchase fine contemporary art for Kapernekas in late Spring of 2002.  Id., ¶ 19.  Kapernekas accepted his offer because she knew that he was a successful investor with expertise in purchasing, investing and collecting contemporary art by prominent artists.  Id., ¶ 20.  She also knew that prices for contemporary art by established artists was escalating rapidly at the time.  Id.

Brandhorst's access to fine art dealers meant he had the ability to negotiate lower prices when purchasing contemporary art from prominent artists.  Id., ¶ 21.  This ability was enhanced due to the types and amount of art he purchased, as well as the fact that he often purchased art on behalf of his prestigious Brandhorst Foundation for the Brandhorst Collection. Id.

Kapernekas agreed to provide Brandhorst with her funds to invest in contemporary art on her behalf at the Gagosian Gallery, located in Manhattan, New York.  Id., ¶ 22.  They agreed that Brandhorst would safeguard the art for an unspecified duration until such time as it could be sold for significantly more than the purchase price.  Id.  Kapernekas knew that Brandhorst would not

4

want to sell the artwork for at least 4-5 years, because collectors such as Brandhorst do not want to have a reputation for "churning" or quickly re-selling art they have only recently purchased. Id.

At the time when she agreed to transfer her funds, Kapernekas knew that art purchased from the Gagosian Gallery would be from an established contemporary artist, in part because she had researched the types of pieces being shown and sold by that gallery at the time. Id., ¶ 23. She relied upon Brandhorst's expertise in deciding to permit him to use her funds to invest on her behalf in the fine art market and she hoped to obtain a substantial return on her investment. Id., ¶ 24.

In July, 2002, at the express request of Brandhorst, Kapernekas transferred $825,416.83 from the Kapernekas Account directly to an account managed by Chase Bank on behalf of the Gagosian Gallery, located in Manhattan, New York. Id., ¶ 24 and Exhibit "A". The sole purpose of this transfer was to permit Brandhorst to purchase contemporary art as an investment for Kapernekas. Id.

After purchasing the artwork, Brandhorst assured Kapernekas that it was a good investment. Id., ¶ 27. She did not immediately request that he identify the artwork because, due to their personal relationship and his expertise, she trusted him and did not suspect or have reason to suspect that Brandhorst would try to claim ownership rights over the art. Id., ¶ 28. She also knew that investors such as Brandhorst typically keep art purchases confidential for a period of at least 5 to 7 years depending upon the artwork and the market. Id. When she inquired about the identity of the artwork at a later date Brandhorst told her not to worry about it and she continued to trust him for these same reasons. Id., ¶ 29.

In January 2007, Kapernekas decided that she was no longer interested in tying her funds

5

up in the artwork, and was ready to realize the value of her investment. Contemporary art of the type selected and purchased by Brandhorst from the Gagosian Gallery in New York had greatly increased in value over the last 5 – 8 years. Id., ¶ 33. On or around February 2, 2007, Kapernekas, through her attorneys, made a demand for the art during a meeting with an attorney at the Blank Rome firm who represented Brandhorst. Id., ¶ 34. Brandhorst's attorney would not confirm the identity of the artwork and the ownership interest of Kapernekas in the art. Id. After additional efforts proved futile, Kapernekas commenced this lawsuit against Brandhorst and the Brandhorst Foundation on April 29, 2008 seeking to recover the art or the proceeds from its sale. Id., ¶ 35. At the time Kapernekas did not know for certain the identity of the contemporary artist whose work she had purchased but she concluded the art must have so greatly increased in value that Brandhorst no longer wanted to surrender it or permit her to share in the proceeds of its sale. Id. At no time prior to February, 2007 did Brandhorst ever indicate to Kapernekas that he was asserting ownership over the art. Id., ¶ 32.

Kapernekas named the Brandhorst Foundation as a defendant in her original complaint because Brandhorst had stated to her and the news media that all of "his" artwork had been transferred to the Brandhorst Foundation and she concluded that the Brandhorst Foundation might assert a claim of ownership over the art. Id., ¶ 36.

On June 11, 2008, Brandhorst and the Brandhorst Foundation filed a motion to dismiss the complaint. Brandhorst and the Brandhorst Foundation stated in their motion papers (which included a sworn declaration from Brandhorst) that Brandhorst claims sole title to the art and the Foundation does not assert any ownership interest over the art. See Declaration of Udo Fritz-Hermann Brandhorst In Support of Defendant's Motion To Dismiss The Complaint ("Brandhorst Declaration"), ¶ 32 ("The Foundation has no ownership or other interest in either of the Works

6

that are at issue in this lawsuit. Instead, title to the works passed to me on or about July 1, 2002, when I personally paid for them in full. To this day, I am the sole and exclusive owner of the Works.")

Brandhorst attached "Invoice 02252 Revised" from the Gagosian Gallery as an exhibit to his sworn declaration in support of the motion to dismiss. That invoice evidences that the funds from Kapernekas were used by Brandhorst to partially pay for two pieces by renowned contemporary artist Damien Hirst: A painted bronze statute titled *Hymn* and a mixed media piece titled *Pill Cabinet*. (A true and correct copy of the "Invoice 02252 Revised" proffered by Brandhorst is annexed to the first amended complaint as Exhibit "A"). The invoice evidences that the total purchase price for the two pieces was $3,000,000.00. The invoice does not state the price for each piece and, therefore, Kapernekas does not know whether her funds were used to purchase one of the two pieces or whether she has an ownership interest in both pieces. The invoice reflects that $825,785.00 of the total purchase price was to be paid by a wire from the Kapernekas Account ("Basler Kantonalbank").

Brandhorst's sworn declaration in support of the motion to dismiss contains multiple additional exhibits including wire instructions signed by Kapernekas that show the wire from the Kapernekas Account to the Gagosian Gallery's Chase Bank Account on or about July 1, 2002 and references "Invoice 02252". (A true and correct copy of the July 1, 2002 wire instructions with a more recent English translation proffered by Brandhorst are annexed to the first amended complaint as Exhibit "B").

Brandhorst states in his sworn declaration, dated June 10, 2008, that he does not have any obligation to compensate plaintiff for her investment in the art because he entered into an agreement with her under which she consented to accept a "substitute payment arrangement" of

7

$20,000.00 per month. Brandhorst Declaration, ¶ 10. This sworn statement, however, is contradicted by the sworn and notarized answer of Mr. Brandhorst, dated February 27, 2008, that he filed in New York Family Court (annexed to the Declaration of Chaya F. Weinberg-Brodt as Exhibit 7). Mr. Brandhorst represented to the Family Court that he is a "generous father" who made "voluntary" support payments of $20,000.00 per month for his daughter. This belies his current contention that these payments were made in exchange for the $825,416.83 that plaintiff wired to the Gagosian Gallery at his request. Also glaringly absent from plaintiff's motion papers is any cogent explanation as to why Brandhorst, a billionaire, would request that Kapernekas transfer her funds to the Gagosian Gallery unless he intended to purchase art on her behalf. Certainly if he intended to purchase art for himself he could have used his own funds. Brandhorst also fails to articulate why plaintiff would agree to transfer this large sum of money to a contemporary art gallery --- where art prices were increasing exponentially at the time -- in exchange for payments over time of $20,000.00 per month. It simply doesn't add up and for that additional reason the Court should deny defendant Brandhorst's motion to dismiss.

## IV.    Standard of Review

### A.    Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in favor of the plaintiff. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Todd v. Exxon Corp., 275 F.3d 191, 197 (2d Cir. 2001). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has

stated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v.</u> <u>Twombly</u>, 127 S. Ct. 1955, 1974 (2007); <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007). The complaint should be read generously, and dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Todd</u>, 275 F.3d at 197-98 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). At the same time, while "the well-pleaded material allegations of the complaint are taken as admitted . . . conclusions of law or unwarranted deductions of fact are not admitted." <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994) (citation omitted). In addition, although a court considering a motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the court may also consider any statements or documents incorporated by reference. <u>Paulemon v. Tobin</u>, 30 F.3d 307, 308-309 (2d Cir. 1994) (citing <u>Allen</u> <u>v. Westpoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991).

### B.    Fed. R. Civ. P. 56

Defendants' motion, although styled as a motion to dismiss, is essentially presented as a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, because it contains detailed declarations and numerous exhibits that are not appropriate submissions in connection with a motion to dismiss.

"When considering a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), a court must limit itself to facts stated in the complaint, documents attached to the complaint and documents incorporated into the complaint via reference." <u>Sloane v. Mazzuca</u>, No. 04-CV-8266, Slip. Op. (S.D.N.Y. Nov. 14, 2006). Here, the Court should apply the standard under Fed. R. Civ. P. 12(b)(6) because plaintiff has not had any opportunity to obtain discovery from defendant or

relevant third parties such as the Gagosian Gallery, or the banks involved in the underlying financial transactions.

If the Court nevertheless chooses to review the declarations and exhibits submitted by defendant Brandhorst, then defendant's motion should be converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Out of an abundance of caution, plaintiff has submitted a short declaration that attests to the accuracy of the allegations contained in the first amended complaint. She has also attached a few documents to her declaration that (contrary to defendant Brandhorst's claims) evidence that she was the true owner of the bank account and the funds at issue.

Rega rdless of how defendant's motion is categorized it should be denied because (1) plaintiff has sufficiently pled her claims, (2) her sworn declaration attests to the accuracy of the allegations in the first amended complaint, and (3) there are material issues of disputed fact that would preclude summary judgment. For all of these reasons the motion to dismiss should be denied.

### V.    **Argument**

### A.    **Plaintiff's Claims Are Timely**

#### 1.    **Counts I And II: Replevin And Conversion**

Under New York law, there is a 3 year statute of limitations for replevin or conversion claims. CPLR § 214; Guggenheim Found. v. Lubell, 77 N.Y.2d 311, 318, 569 N.E.2d 426 (1991). When the chattel at issue is in the hands of someone who rightfully possesses it – either as an innocent good-faith purchaser for value or a bailee in a bailment of infinite duration – a cause of action for replevin accrues when, after demand is made on the possessor, the possessor refuses to return the chattel. It is at this point when possession is considered wrongful.

10

Sanchez v. Trustee of The University of Pennsylvania, No. 04 Civ. 1253, 2004 WL 1621884 * 1

(S.D.N.Y. 2004)(Rakoff, J.); Guggenheim Found., 77 N.Y.2d at 317, 569 N.E.2d at 426 (demand

and refusal rules applies to innocent good-faith purchaser for value); Hoelzer v. City of

Stamford, Connecticut, 933 F.2d 1131 (2d Cir. 1991)(demand and refusal rule applies to bailor-

bailee relationship); Rahanian v. Ahdout, 258 A.D.2d 156, 694 N.Y.S.2d 44 (1st Dep't 1999);

Martin v. Briggs, 235 A.D.2d 192, 663 N.Y.S.2d 184, 197-98 (1st Dep't 1997).

Here, plaintiff alleged that the arrangement between her and Brandhorst began as a

bailment of infinite duration. She agreed to transfer her funds to the Gagosian Gallery in July,

2002, and Brandhorst agreed to purchase and safeguard contemporary art for her for an

unspecified duration until such time as it could be sold for significantly more than the purchase

price. AC, ¶ 22.

Brandhorst used her funds to purchase the art and took possession of it. AC, ¶ 26;

Brandhorst Declaration, ¶ 14. At no time prior to February, 2007 did Brandhorst explicitly or

implicitly suggest to her that he was asserting ownership of the artwork. AC, ¶ 32. Specifically,

she alleged that he told her that he made a good investment and that she should not worry about

the identity of the artwork. AC, ¶¶ 27, 29. Due to their personal relationship and his expertise,

she continued to trust him. AC, ¶¶ 28, 29. Only after she made a demand for the art in

February, 2007 and Brandhorst refused to identify the art or surrender it to her, did she realize

that he was asserting sole ownership over the art. AC, ¶ 34.

Under these facts, which must be taken as true in the context of a motion to dismiss, the

statute of limitations did not start to run until February, 2007. Plaintiff filed her complaint on

April 29, 2008 seeking to recover the art or the proceeds from its sale. Plaintiff filed her first

amended complaint in June 25, 2008. Both complaints were filed well within three years of

11

February, 2007 and, therefore, defendant's motion to dismiss Counts I and II of the amended complaint should be denied.

### 2.     Count III: Breach of Fiduciary Duty

New York law does not provide a single statute of limitations period for a cause of action arising from a breach of fiduciary duty. The statute of limitations instead turns on the substantive relief sought. If the relief is equitable in nature, then a six-year statute of limitations applies (CPLR § 213(1)), whereas if the relief sought is monetary damages, the statute of limitations is three years (CPLR §214(4)). See Loengard v. Santa Fe Industries, 70 N.Y.2d 262, 519 N.Y.S.2d 801, 514 N.E.2d 113 (1987). One exception to this rule is CPLR § 206(a)(1). It provides that where a right grows out of the receipt or detention of property by any person acting in a fiduciary capacity prior to the acquisition of the property in question, an action accrues at the time when the person having the right to make the demand discovered the facts upon which the right depends. Paine Webber Real Estate Securities, Inc. v. D.G. Meyer & Co., 835 F. Supp. 116, 119 (S.D.N.Y. 1993). A cause of action for breach of fiduciary duty accrues at the time of the breach. Ciccone v. Hersh, 530 F.Supp.2d 579 (S.D.N.Y. 2008).

Here, plaintiff seeks equitable or monetary relief in Count III of the first amended complaint. Her claim for equitable relief is timely under any scenario, because even assuming that the breach occurred when she transferred the funds to Brandhorst (July 1, 2002), this is within 6 years. Her claim for monetary relief is also timely because Brandhorst owed Kapernekas fiduciary duties prior to taking possession of her artwork, in addition to Brandhorst's fiduciary duties arising out of the bailment of the art. Plaintiff, however, did not discover until February, 2007 that he had breached his fiduciary duties to her. For these reasons defendant's motion to dismiss Count III of the amended complaint should be denied.

### 3.    Count IV: Breach of Contract – (Bailment of Infinite Duration)

The statute of limitations for breach of a bailment is six years. CPLR § 213(2). Generally, a breach of contract claim accrues on the date of the breach at issue in the litigation, even if the injured party is not aware of it or the resulting harm does not occur until a later date. Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 615 N.E.2d 985 (1993).

Brandhorst and plaintiff entered into a bailment contract in July, 2002 when he paid the invoice to the Gagosian Gallery in New York, in part with her funds, and took possession of the art. AC, ¶¶ 25-6. Although Brandhorst agreed to safeguard the art until such time as it could be sold for significantly more than the purchase price, he did not surrender it at a time when the value of the price of art has skyrocketed. AC, ¶ 22. Thus, even if her claim for breach of contract arose on that date her claim would still be timely because she filed her complaint on April 29, 2008 and her first amended complaint on June 25, 2008.[2] See Stellan Holm, Inc. v. Malmberg Int'l Art, AB, No. 01 Civ. 1053, 2002 WL 392294 (S.D.N.Y. 2002)(permitting bailment claim and conversion to proceed simultaneously because there were genuine issues of material fact that could not be resolved on a motion to dismiss). Defendant's motion to dismiss Count IV of the first amended complaint as time-barred should be denied.

### 4.    Count V: Unjust Enrichment

A cause of action for unjust enrichment has a six year statute of limitations. CPLR § 213(1); Malmsteen v. Berdon, LLP, 477 F.Supp.2d 655 (S.D.N.Y. Mar. 20 2007); .E.A.M. Entertainment, Inc. v. Douglas, 361 F. Supp.2d 362, 369 (S.D.N.Y. 2005) (Rakoff, J.); Elliott v. Qwest Communications Corp., 25 A.D.3d 897 (3d Dep't 2006); Niagara Mohawk Power Corp. v. Freed, 288 A.D.2d 818 (4th Dep't 2001); Chanler v. Robers, 275 A.D.2d 625 (1st Dept 2000); cf.

---

[2] The breach of contract claim was not included in plaintiff's first complaint but the Court need not analyze whether the claim relates back to that date because the first amended complaint was filed within 6 years of July 1, 2002.

Piltman v. Leibowitz, 990 F. Supp. 336 (S.D.N.Y. 1998). An unjust enrichment claims accrues upon the occurrence of the wrongful act which gives rise to the obligation to make restitution. Ross Network, Inc. v. RSM McGladrey, Inc., No. 19475-05, 2006 WL 1160007 (N.Y.Sup., Erie Co. 2006).

Here, plaintiff seeks equitable or monetary relief in Count V of the first amended complaint. Even assuming that Brandhorst's wrongful conduct occurred when Kapernekas transferred the funds to Brandhorst (July 1, 2002), Kapernekas' unjust enrichment claim was filed within 6 years and is therefore timely.[3] Thus, Defendant's motion to dismiss Count V of the first amended complaint as time-barred should be denied.

### 5.    **Count VI: Constructive Trust**

There is a six-year statute of limitations for an action seeking to impose a constructive trust. CPLR § 213(1); McGovern v. Solomon, 466 F.Supp.2d 554, 558 (S.D.N.Y. 2006)(Rakoff, J.). A cause of action for a constructive trust accrues at the time of the wrongful act giving rise to the duty of restitution. Id.; Pagali v. Del Re, No. 99 Civ. 9030, 2001 WL 220013 * 7 (S.D.N.Y. 2001) (imposing constructive trust on painting).

Here again, plaintiff has alleged that at the request of Brandhorst she transferred the funds on or about July 1, 2002. Thus, even if her claim for a constructive trust arose on that date it would be timely because her first complaint was filed on April 29, 2008 and her first amended complaint was filed on June 25, 2008. (The claim for a constructive trust was not included in plaintiff's first complaint but here again the Court does not need to analyze whether the claim

---

[3] While Brandhorst maintains that an unjust enrichment claims has a three year statute of limitations, this rationale in only followed by the Second Department. This Court should apply the 6 year statute of limitations because: (1) this Court has applied a 6 year statute of limitations to unjust enrichment claims; (2) The First, Third and Fourth Departments apply a 6 year statute of limitations and (3) the authority from this Court cited in Grynberg v. ENI S.p.A, 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007), which Brandhorst relies upon, was misplaced because a breach of fiduciary duty claim was before that court, and not an unjust enrichment claim.

relates back to that date because the first amended complaint was filed within 6 years of July 1, 2002). For these reasons defendant's motion to dismiss plaintiff's claim for a constructive trust as time-barred should be denied.

## B.    Brandhorst Is Equitably Estopped From Asserting His Statute of Limitations Defense

Despite the fact that Kapernekas maintains that Brandhorst did not exercise exclusive ownership over the art until February, 2007, Brandhorst argues that Kapernekas should have known that he converted the subject art in 2002 (when she wired her funds to the Gagosian and/or Brandhorst purchased the art with her funds) or in 2004 (on the filing of her petition in Family Court for sole custody). See Guggenheim Found., 77 N.Y.2d at 318, 569 N.E.2d at 426 (holding that where the chattel is in the hands of someone who does not have the right to possess it or where the lawful custodian performs some overt converting act (*e.g.*, the unlawful sale or disposition of the property, the cause of action for conversion accrues at the time of the overt act, and no demand and refusal is required). Because Brandhorst's admissions effectively show that he concealed the theft, the statute of limitations should be equitably tolled.

A court may bar the assertion of statute of limitations as a defense where the party raising the defense intentionally concealed, deceived, or misrepresented the theft at issue. Farkas v. Farkas, 168 F.3d 638 (2d Cir. 1999)(determining that there was more than ample evidence to support an equitable estoppel argument in response to a statute of limitations defense concerning the prosecution of an art recovery claim). Here, even though Kapernekas knew that Brandhorst possessed the art at all relevant times, she alleged that she had no reason to suspect that Brandhorst was asserting sole ownership over the art until February, 2007 when she made an actual demand for the return of the art and he refused her demand. AC, ¶ 32, 34. She alleges that on all prior occasions when she inquired about the identity of the subject art, Brandhorst told

15

her not to worry about it and she trusted him and relied upon these representations because of their personal relationship and his expertise.  AC, ¶ 28, 29.  Moreover, she had no reasons to suspect he was asserting ownership over the art in 2004 (when she filed petitions for custody and support in family court) because she and his daughter continued to reside at the Wooster Street apartment and he continued to make support payments.  Indeed, during this time-frame the financial relationship between them remained unchanged.  Thus, Brandhorst frustrated Kapernekas' ability to learn about the conversion, and she did not have all of the necessary information to file a claim until February, 2007.  Therefore, Brandhorst's statute of limitations defense should be barred as a matter of law.

## C.   **Plaintiff's Claims Are Not Barred By Laches**

Unreasonable delay is only relevant to a laches defense, and the burden of proof is on the person raising it.  Guggenheim v. Lubell, 77 N.Y.2d 311, 319, 569 N.E.2d 426, 567 N.Y.S.2d 623 (N.Y. 1991), Hoelzer v. Stamford, 933 F.2d 1131, 1136 (2d Cir. 1991).  There is no burden on the true owner of artwork to allege that they exercised reasonable diligence for purposes of the statue of limitations.  Id.

Laches is an equitable defense that requires a showing of delay and prejudice to the party asserting it.  Hoelzer, 933 F.2d at 1137.  "But often cases dealing with the laches defense in the context of stolen or lost artwork do not discuss concretely what constitutes prejudice or undue delay because their fact-specific nature requires that they be sent to trial."  RALPH E. LERNER AND JUDITH BRESSLER, ART LAW: THE GUIDE FOR COLLECTORS, INVESTORS, DEALERS, AND ARTISTS, 280 (Practicing Law Institute, New York City ed., 2005)(1989).

Relying upon the New York Court of Appeals decision in Guggenheim, the First Department in Peters v. Sotheby's, Inc., 34 A.D.3d 29, 821 N.Y.S.2d 61, 69 (1st Dep't 2006)

16

explained that "where the due diligence of the original owner of a work of art raises question of fact, the issue of whether its lack of diligence operated to the prejudice of the other party currently in possession of the artwork is appropriately resolved at trial." Id.; see Guggenheim, 7 N.Y.2d 311, 319, 569 N.E.2d 426, 567 N.Y.S.2d 623 (reserving issue of defendant's laches defense for trial); Czartoryski-Borbon v. Turcotte, No. 107958/97 (N.Y. Sup. Ct., N.Y. Co., April 15, 1999), N.Y. L.J., April, 27, 1999, at 27, col. 2, appeal withdrawn, 264 A.D.2d 545, 697 N.Y.S.2d 228 (1st Dep't 1999) (same); Martin v. Briggs, 235 A.D.2d 192, 663 N.Y.S.2d 184, 199 (1st Dep't 1997) (reversing trial court decision based upon finding that it was inappropriate to grant summary judgment on issue of laches and statutes of limitations defenses because there were questions of fact requiring trial). Whereas, if the original owner's lack of due diligence and the prejudice to the current possessor is apparent, the issue may be resolved as a matter of law. Peters, 34 A.D.3d 29, 821 N.Y.S.2d at 69.

Here, it would not be appropriate to decide at the motion to dismiss stage whether Kapernekas' claims are barred due to laches. To begin with, plaintiff did not unreasonably delay in seeking the return of her bailed property. This is not the type of case where plaintiff waited ten, twenty, or thirty years or more to make her demand. See Sanchez v. Trustee of The University of Pennsylvania, No. 04 Civ. 1253, 2005 WL 94847 * 3 (S.D.N.Y. 2004)(Rakoff, J.) (determining that 80 years was unreasonably delay); Peters v. Sotheby's, Inc., 34 A.D.3d 29, 821 N.Y.S.2d 61 (1st Dep't 2006) (finding 70 years rose to the level of unreasonable delay); Leventritt v. Sotheby's, Inc., 5 A.D.3d 225, 773 N.Y.S.2d 60 (1st Dep't 2004) (finding 30 years was dilatory); Wertheimer v. Cirker's Hayes Storage Warehouse, 300 A.D.2d 117, 752 N.Y.S.2d 295 (1st Dep't 2002) (finding that approximately 50 years amounted to unreasonable delay); Pagliai v. Del Re, No. 99 Civ. 9030, 2001 WL 220013 * 6 (S.D.N.Y. 2001) (finding fourteen

17

years was unreasonable delay). In fact, from the date upon which Kapernekas wired her funds to the Gagosian Gallery, she waited only 4 years and 7 months to make her demand. At a minimum it is a question of fact as to whether this amount of delay is unreasonable. See Rahanian v. Ahdout, 258 A.D.2d 156, 694 N.Y.S.2d 44 (1st Dep't 1999)(summary judgment denied because issue of whether 6 year delay was unreasonable was a question of fact for trial).

Moreover, Kapernekas' reasons for waiting were reasonable under the circumstances: (i) she was ready to realize the value of her investment and knew that contemporary art work of the type selected by Brandhorst from the Gagosian Gallery in New York had greatly increased in value over the last 5-8 years (AC ¶ 33);(ii) she knew that investors such as Brandhorst typically keep art purchases confidential for a period of at least 5 to 7 years depending upon the artwork and the market (AC¶ 28) and (iii) she knew that Brandhorst would not want to sell the artwork for at least 4-5 years, because collectors such as Brandhorst do not want to have a reputation for "churning" or quickly re-selling art they have only recently purchased.[4]

Brandhorst's claim that he was prejudiced by Kapernekas' conduct is untenable on two grounds: (i) there are no deceased witnesses, or concern for faded memories, lost documents, and hearsay testimony of questionable valuu, Sanchez, No. 04 Civ. 1253, 2005 WL 94847 (Rakoff, J.); and (ii) the material change in his position is belied by the fact that the value of the artwork has sky rocketed.

Brandhorst argues that he would not have continued to provide money to Kapernekas on a monthly basis, even after she withdrew her April 2004 suit against him (pp. 12). Brandhorst's statements are flatly contradicted by his representations to the Family Court that he is a

---

[4] Brandhorst's reliance upon *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 924 (S.D.N.Y. 1991) – for the proposition that three years constitutes unreasonable delay – is misplaced and inapposite. It is not clear how *Schmitz*, which involved a plaintiff who delayed in filing a contempt motion, is analogous at all to the case at bar.

18

"generous father" who made "voluntary" support payments of $20,000.00 per month for his daughter, and not Kapernekas. Additionally, although Brandhorst goes to great lengths to inform the Court of the value of the payments he made to Kapernekas from June 2002 to the present (a majority of which are for his daughter), no where does Brandhorst mention how he was prejudiced when the current value of the subject art has sky rocketed.

Brandhorst's argument that plaintiff should have sought recovery of the art work in 2004 when she filed for support and sole custody of AN in Family Court makes little sense.  He does not explain the relationship between the Family Court proceedings and the investment and sheds little light on why plaintiff would demand the art at this time when Mr. Brandhorst was (according to his own papers) continuing to make payments to her and she was continuing to reside in the Wooster Street apartment.  In sum, while the Family Court proceedings unequivocally show a dispute between plaintiff and defendant, centered on the minor child, all other available evidence shows that the financial arrangements between them remain unchanged.

Finally, plaintiff should not be making these arguments within the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), where the Court's analysis should be largely confined to the four corners of the complaint and all factual allegations and inferences there from must be drawn in favor of the plaintiff. Under that standard plaintiff has adequately pled her causes of action against defendant Udo Brandhorst and his motion to dismiss should be denied. Further, under the standard of review employed in the context of a Fed.R.Civ.P. 56 motion for summary judgment the motion should be denied because there are material issues of disputed fact that preclude the Court from determining whether the timing of plaintiff's demand was reasonable under the circumstances.[5]

---

[5] Brandhorst insinuates but does not affirmatively argue that he owns the artworks by the doctrine of adverse possession.  Taking plaintiff's well-pleaded complaint as true, Brandhorst cannot establish that possession of the art

19

## V.    Conclusion

For all of the reasons set forth above, plaintiff Venetia Kapernekas respectfully submits

that the Court should deny the motion to dismiss of defendant Udo-Fritz Hermann Brandhorst.

Respectfully submitted,

FOX ROTHSCHILD, LLP


/s/ John A. Wait
John A. Wait, Esq. (JW 2558)
Samantha H. Evans (SE 0728)
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940


OF COUNSEL:
Robert E. Goldman (Admitted *pro hac vice*)
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
*ATTORNEYS FOR PLAINTIFF:*
VENETIA KAPERNEKAS

---

work was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a three year statutory period. Bd of Managers of Soho Int'l Arts Condo. v. City of New York, No. 01 Civ. 1226, 2005 WL 1153752 * 6 (S.D.N.Y. 2005). "'Where the possession is permissive in its inception, its character will be changed to adverse, so as to permit the running of the statutory period only when the possessor evidence a claim of ownership by some tangible act in hostility to the rights of the real owner. Id., quoting Rabinoff, 329 F. Supp. 841 (S.D.N.Y. 1971). Because plaintiff has alleged that Brandhorst's possession of the subject artwork did not become wrongful until February, 2007, Brandhorst did not (and cannot) show by clear and convincing evidence that the elements of open, notorious, and continuous possession have been met. Moreover, because plaintiff alleges that she owns the subject art by virtue of the fact that her funds were used to invest in the art, Brandhorst cannot satisfy the exclusive element either.