**WITHERS BERGMAN LLP**
Hollis Gonerka Bart (HB-8955)
Chaya Weinberg-Brodt (CW-4676)
430 Park Avenue, 10th floor
New York, New York 10022
212.848.9800 (p)
212-848-9888 (f)
*Attorneys for Udo Fritz-Hermann Brandhorst*
*and The Brandhorst Foundation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
VENETIA KAPERNEKAS,

                Plaintiff,

      -against-

UDO FRITZ-HERMANN BRANDHORST,

                Defendant.
------------------------------------------------------------x

No. 08-CV-4046 (JSR)


**REPLY MEMORANDUM OF LAW OF DEFENDANT**
**UDO FRITZ-HERMANN BRANDHORST IN FURTHER**
**SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

Preliminary Statement ...................................................................................................... 1

ARGUMENT .................................................................................................................... 2

POINT I THE STATUTE OF LIMITATIONS BARS ALL CLAIMS ........................... 3

POINT II PLAINTIFF'S CLAIMS ACCRUED IN JULY 2002 .................................... 5

    A.    Plaintiff Did Not, and Cannot, Properly Plead an Infinite Bailment ................ 5

    B.    Plaintiff's Claim is Barred by Laches ................................................................ 8

Conclusion ...................................................................................................................... 10

# Table of Authorities

**Cases**

*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965-1969 (2007)..........................................2, 6

*Bunker v. Bunker,* 80 A.D.2d 817, 818 (1st Dep't 1981) ...............................................................4

*Center Cadillac v. Bank Leumi Trust Co.,* 808 F. Supp.2d 213, 227 (S.D.N.Y. 1992)..................................................................................................................................8

*Ciccone v. Hersh,* 530 F. Supp.2d 574, 579 (S.D.N.Y. 2008).......................................................7

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)...........................................................................5, 6

*Farkas v. Farkas,* 168 F.3d 638, 642-44 (2d Cir. 199).................................................................8

*Gold Sun Shipping Ltd. v. Ionian Transport Inc.,* 245 A.D.2d 420, 421 (2d Dep't 1997)..................................................................................................................................4

*Hellman v. Hoenig & Co., Inc.,* 244 A.D.2d 529, 530 (2d Dep't 1997).........................................4

*In re Express Indus. & Term. Corp. v. New York State Dep't of Transportation,* 93 N.Y.2d 584, 586 (1999)............................................................................................7

*Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007).....................................................................6

*Katz v. Kar,* 192 A.D.2d 695, 696 (2d Dep't 1993).......................................................................5

*Malmsteen v. Berdon, LLP,* 477 F. Supp.2d 655, 667-68 (S.D.N.Y. 2007) ..................................3

*Pagliai v. Del Re,* 2001 WL 220013 at ** 6-7 (S.D.N.Y. March 7, 2001).....................................4

*Paine Webber Real Estate Secs., Inc. v. D.G. Meyer,* 835 F. Supp. 116, 119 (S.D.N.Y. 1993).............................................................................................................7

*Rattenni v. Cerreta,* 285 A.D.2d 636, 637 (2d Dep't 2001) ..........................................................4

*Schermerchorn v. Metropolitan Transp. Auth.,* 156 F.3d 351, 353 (2d Cir. 1998).......................8

*Spinale v. Tenzer Greenblatt, LLP.,* 309 A.D.2d 632, 632 (1st Dep't 2003) ................................4

*Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 488 (1983) ............................................................4

*Storey v. Sum,* 151 A.D. 2d 991, 991 (4th Dep't 1989)................................................................7

**Statutes**

CPLR § 206 (a)(1) .........................................................................................................................7

## Table of Authorities

CPLR § 214 (3)(4) ........................................................................................................................3

FRCP 12(b) ..................................................................................................................................3

FRCP 56........................................................................................................................................3

696214.5.

## Preliminary Statement

If the embellished story in plaintiff's Amended Complaint and in her response papers is to be believed, Ms. Kapernekas, an international gallerist, art collector and gallery owner with a 20-year career and an "established reputation in the art world," simply handed over $825,000 in cash to a well-known gallery to make an "investment" in art. Yet she did so without getting a single scrap of paper from the gallery or from Mr. Brandhorst to memorialize the ownership interest she now claims to have in the Works, the name or price paid for those Works, to whom or where they were delivered, or the material terms under which she now claims to have bailed those Works to Mr. Brandhorst for safekeeping for "at least" four to five years. VK Dec. ¶¶ 2-9; AC ¶¶ 19-27. Instead, she just "trusted" Mr. Brandhorst to hold onto the art for her, even though their personal relationship had already ended by the time she transferred the money. UB Reply Dec. ¶¶ 2-3. She "continued to trust him" even after her attempts to "periodically inquire" about "her" art were repeatedly rebuffed.[1] VK Dec. ¶ 29.

Even when she sued him in April 2004 for custody and for child support, Ms. Kapernekas affirmatively chose not to assert a claim for the value of "her" art while those proceedings were pending. UB Dec. ¶¶ 22-23. For reasons known only to Ms. Kapernekas, she apparently was not "ready to realize the value of her investment" until February 2007, when she first let on that she felt she had some interest in the Works, by making demand for their return. VK Dec. ¶ 33.

Of course, by then, she had accepted more than $2 million in cash and in-kind benefits from Mr. Brandhorst, including the $20,000 monthly payments. UB Dec. ¶ 17, Ex. D. Though

---

[1] Except as defined herein, all capitalized terms shall have the meaning ascribed to them in defendant's opening brief. "Amended Complaint" ("AC") means the Amended Complaint filed on June 25, 2008 and attached to the Declaration of John A. Wait, executed on June 26, 2008 as Exhibit A. "VK Dec." means the Declaration of Venetia Kapernekas, executed on June 26, 2008. "UB Dec." means the Declaration of Udo Fritz-Hermann Brandhorst, executed on June 11, 2008. "UB Reply Dec." means the Declaration of Udo Fritz-Hermann Brandhorst, executed on July 2, 2008.

Ms. Kapernekas couches that arrangement as one of "support," she does not unequivocally deny that she agreed to accept those payments (however they are characterized) in lieu of the remaining funds in the bank account as part of the substitute arrangement detailed in Mr. Brandhorst's motion papers.[2] *See* VK Dec. ¶ 11; UB Dec. ¶¶ 9-10, 16-17; Def. Mem. p.2-3.

When viewed under the standards established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007) ("*Twombly*"), then, the claims articulated by Ms. Kapernekas are simply not plausible, and thus, can and should be rejected even on this motion to dismiss. Indeed, Ms. Kapernekas, an experienced international art dealer, silently stood by while Mr. Brandhorst openly and notoriously held legal title to, and maintained control of, the Works, to the exclusion of Ms. Kapernekas. Her claims are thus all time-barred under the three-year limitations period applicable to claims arising from Mr. Brandhorst having purportedly converted those Works for himself. Certainly, having chosen not to assert a claim, much less declare her claimed interest in the Works, in June 2004, when she had every opportunity to do so, Ms. Kapernekas has, to Mr. Brandhorst's prejudice, waited too long to assert any claim of right in either of the Works.

## ARGUMENT

In response to defendants' motion to dismiss, plaintiff conceded she has no case against the Foundation and dropped it from this case. She then filed an Amended Complaint in which

---

[2] As Ms. Kapernekas well knows, no order of child support at any level – and certainly not at a level of $20,000 per month in cash, *plus* $20,000 per month in in-kind rental support, *plus* substantial credit card bills, *plus* school fees for AN and for Orestes (who is not related to Mr. Brandhorst) – was ever entered against Mr. Brandhorst. Rather, as Mr. Brandhorst expressly told the Family Court, his transfers to Ms. Kapernekas are "voluntary." *Id.* The same is true of the approximately $1 million he used to fund Ms. Kapernekas' account in 1999, before AN was born. AC p.3. Thus, her suggestion that Mr. Brandhorst took an inconsistent position when he stated in papers filed with the Family Court that he was a "generous father" who was voluntarily providing substantial support (*see* Weinberg-Brodt Dec. Ex. 7 ¶ 14), is simply not true.

she attempts to plead around the many flaws exposed in defendants' moving papers. Upon a close examination of her papers, however, plaintiff remains unable to plead a timely or plausible claim against Brandhorst, as further demonstrated below.[3]

## POINT I

### THE STATUTE OF LIMITATIONS BARS ALL CLAIMS

The essence of plaintiff's claims against Mr. Brandhorst is to recover a chattel, or damages for taking a chattel, or damages for injury to personal property (*i.e.*, conversion or replevin). CPLR § 214 (3)(4). Each of these claims is governed by a three-year statute of limitations and is thus time-barred. *Id.*; see Def. Mov. Memo pp. 7-9.

In her Amended Complaint, plaintiff tries to evade the limitations bar by repackaging her old allegations as new claims (breach of bailment contract, constructive trust), and by recasting her breach of fiduciary duty claim to add a request for equitable relief, all in an effort to take advantage of a longer statute of limitations. However, regardless what name, or how many new or different names plaintiff ascribes to her claims, New York law prohibits these machinations as a way of resurrecting time-barred claims. *See Malmsteen v. Berdon, LLP,* 477 F. Supp.2d 655, 667-68 (S.D.N.Y. 2007) ("if the unjust enrichment claim is merely incidental to or duplicative of

---

[3] In her papers, Ms. Kapernekas suggests that this Court must convert defendant's motion to dismiss into a Rule 56 motion in order to consider the documents annexed to defendants' original motion papers. This is simply not so. Two of the most salient documents (the Gagosian Invoice and the July 2002 wire transfer, with a fax header demonstrating plaintiff's review in June 2004) are now attached as Exhibits to plaintiff's own Amended Complaint. *See* AC at Exs. A and B. The Family Court documents are subject to judicial notice, even on a motion to dismiss. These documents, standing alone, are sufficient to dismiss this case under Rule 12(b) standards.

However, should the Court convert this into a Rule 56 motion, Mr. Brandhorst would still prevail. Ms. Kapernekas' declaration fails to identify any material issues of fact with respect to the statute of limitations or laches defense. Her argument that she has had no discovery of Brandhorst is a red herring. All the evidence she needs to dispute these documents would be in her possession, if such evidence existed – which it clearly does not, since she has proffered none in her Amended Complaint or in her opposition papers.

another claim with a shorter limitations period, the Court will not allow a plaintiff to avail himself of the longer limitations period") (citations omitted) (cited in Opp. Mem. at p. 13); *Rattenni v. Cerreta,* 285 A.D.2d 636, 637 (2d Dep't 2001)(where legal remedy for conversion would have afforded full and complete relief, plaintiff cannot evade a limitations bar by asserting same facts as a claim for breach of fiduciary duty); *see also Bunker v. Bunker,* 80 A.D.2d 817, 818 (1st Dep't 1981) (where multiple causes of action are alleged on same set of facts, courts look to "the essence of the action and not its mere name" to determine limitations period).

This rule has been repeatedly and routinely applied to claims for breach of fiduciary duty, unjust enrichment, constructive trust, and breach of bailment contracts. *See Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 488 (1983) (where actual claim is for conversion, statute of limitations is three years measured from time of conversion, even if plaintiff sues for "trespass"); *accord, e.g., Gold Sun Shipping Ltd. v. Ionian Transport Inc.,* 245 A.D.2d 420, 421 (2d Dep't 1997) (where action, "in reality, sounded in conversion," and additional claims were added "to avoid the Statute of Limitations," claims for fraud, breach of fiduciary duty, and constructive trust were governed by three-year statute and were time-barred) (citations omitted); *Hellman v. Hoenig & Co., Inc.,* 244 A.D.2d 529, 530 (2d Dep't 1997) ("In applying the Statute of Limitations, courts must look to the essence of the claim, and not to the form in which it is pleaded;" claims for constructive trust and accounting governed by three year statute, because they were, "in essence claims for conversion");[4] *Spinale v. Tenzer Greenblatt, LLP.,* 309 A.D.2d 632, 632 (1st Dep't 2003) (where plaintiff "nominally" pleaded causes of action for restitution and unjust enrichment, but the "true" claim is one for malpractice, three-year statute of

---

[4] Ms. Kapernekas' attempt to rely on *Pagliai v. Del Re,* 2001 WL 220013 at ** 6-7 (S.D.N.Y. March 7, 2001) to claim a longer limitations period for her duplicative constructive trust claim is misplaced. In *Paglia,* the argument that the shorter, truer limitations period should apply was apparently neither raised by defendant nor considered by the *Pagliai* Court. *Id.*

4

696214.5.

limitations governs all claims); *Katz v. Kar,* 192 A.D.2d 695, 696 (2d Dep't 1993) ("Further, this action, purportedly to recover damages for breach of a bailment contract is, in fact, an action to recover damages for conversion. Consequently, the action is barred by the three-year statute of limitation").[5]

## POINT II

### PLAINTIFF'S CLAIMS ACCRUED IN JULY 2002

**A.    Plaintiff Did Not, and Cannot, Properly Plead an Infinite Bailment**

Plaintiff next tries to avoid the statute of limitations by arguing that her claims did not accrue until she made a formal "demand" for the art in February 2007. However, as more fully set forth in defendants' moving papers, this is not a case where demand is necessary, because plaintiff has not, and cannot, plead the facts necessary to support a plausible claim of "infinite bailment." To the contrary, if Mr. Brandhorst committed a wrongful act here at all (which is denied), the only possible time he could have done so was in July 2002, when he took exclusive title and possession of the works to the exclusion of plaintiff, transferred the works to Germany without consulting her, and refused to disclose their identity or whereabouts. (AC ¶¶ 26, 29, 38).

Plaintiff's attempt to contort these allegations, to have the Court draw the legal conclusion of a "contract of infinite bailment," must be rejected as a matter of law under *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965-1969 (2007);[6] *accord Iqbal v. Hasty,* 490 F.3d

---

[5] Indeed, the affirmative defense of adverse possession of a chattel for three years, which plaintiff recognizes in her papers (*see* Opp. Mem. pp. 19-20, n. 5) is merely the converse of this general rule. It further establishes New York State policy that a claim for conversion of personal property dies exactly three years after it accrues, and cannot thereafter be brought back to life under the guise of another claim.

[6] Although plaintiff gives a nod to *Twombly* in her brief, her arguments are premised on the now-discredited standard articulated in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). *See* Opp. Mem. p. 9. As this standard has been expressly overruled by *Twombly,* it is no longer a viable means of pushing plaintiff's inherently illogical allegations past a motion to dismiss. *See Twombly,* 127

143, 157-58 (2d Cir. 2007) (complaint must set forth a "plausible" cause of action). Here, beyond the conclusory assertion of the terms "indefinite bailment" and "agreement," plaintiff fails to make any logical, or even remotely plausible, allegations or explanations regarding the specific terms of this vaguely-alleged "agreement."

For example, Ms. Kapernekas still has offered no explanation, let alone one that is plausible, for why she and Mr. Brandhorst "agreed" that Mr. Brandhorst would physically "safeguard" the art for her, and transport it out of the country. Ms. Kapernekas owns an art gallery in New York, and apparently has been in the art business for more than 20 years. VK Dec. ¶¶ 1-2. If she truly owned the Works at issue here, why could she not assume possession of them, and consult with Mr. Brandhorst, if she wished, on an appropriate time to sell them? Ms. Kapernekas likewise offers no conceivable explanation for why she and Mr. Brandhorst "agreed" that the identity of "her" art needed to be concealed from her, the purported owner, even if there were (allegedly) legitimate reasons to conceal the purchase from the outside world.

Ms. Kapernekas also fails to plead any of the material terms of the purported bailment "contract" – such as what consideration Mr. Brandhorst was to receive for his supposed services, or who was to pay the substantial costs of international shipping and import/export taxes (let alone why anyone would waste money doing this, if the Works were "hers" and she is a resident of New York City, where they were purchased). She also fails to allege who was to pay the costs of storage and insurance for the five to seven years Mr. Brandhorst was supposedly "safeguarding" the Works for her. She certainly fails to allege that she paid any part of these expenses. Finally, although plaintiff claims to be a sophisticated player in the art world, she

---

S.Ct at 1968 (*Conley* standard, "after puzzling the profession for 50 years, . . . has earned its retirement" and "is best forgotten").

offers no explanation for why she did not put any of this in writing. *Cf. In re Express Indus. & Term. Corp. v. New York State Dep't of Transportation,* 93 N.Y.2d 584, 586 (1999) (defendant's motion to dismiss claim for breach of contract should have been granted, where plaintiff failed to allege important material elements of a contract).

In sum, the factual allegations in the Amended Complaint lead to only one plausible conclusion; that Mr. Brandhorst openly assumed exclusive title and possession in July 2002, either because he was entitled to do so (as Mr. Brandhorst claims), or wrongfully (as plaintiff claims). But this dispute is immaterial, because in either case, the statute of limitations long since expired.[7]

Finally, plaintiff's attempt to invoke the rarely-used doctrine of equitable estoppel against the statute of limitations is without merit. Mr. Brandhorst did not surreptitiously conceal anything from plaintiff. *See Storey v. Sum,* 151 A.D. 2d 991, 991 (4th Dep't 1989) (equitable estoppel is extraordinary remedy to be invoked only under exceptional circumstances, and not based on equivocal statements). Instead, as plaintiff admits, Mr. Brandhorst openly and notoriously took possession of the Works. Indeed, the most plaintiff can muster is the allegation that when she "periodically" asked Mr. Brandhorst about the identity of the art, he repeatedly refused to disclose their identity, and instead told her "not to worry about it." AC ¶ 29. This

---

[7] In this same vein, plaintiff cannot rely on CPLR § 206 (a)(1) to argue that her breach of fiduciary duty claim did not arise until February 2007. First, because this is not a case where demand was necessary, the statute does not apply on its face. Second, as plaintiff's own cited case makes clear, this rule is inapplicable absent a pre-existing fiduciary duty. *See Paine Webber Real Estate Secs., Inc. v. D.G. Meyer,* 835 F. Supp. 116, 119 (S.D.N.Y. 1993) ("[t]he plain language of the statute indicates that the person against whom the action lies must be a fiduciary prior to the events in question"). While Ms. Kapernekas vaguely argues in her brief (but not in her Amended Complaint or declaration) that Mr. Brandhorst owed her an unspecified fiduciary duty before the events in question, she fails to allege, or even suggest, what that duty was, or why he owed it. This case thus follows the general principle that there is no "discovery rule" for breach of fiduciary duty claims. *Ciccone v. Hersh,* 530 F. Supp.2d 574, 579 (S.D.N.Y. 2008).

alleged brush-off conceals nothing. Instead, it is precisely the type of response a reasonable person would make to a former romantic partner, about art that he owned and she did not. At the very least, it was the type of statement that would put a reasonable person on notice that Mr. Brandhorst viewed and was treating the art as his. *See Schermerchorn v. Metropolitan Transp. Auth.*, 156 F.3d 351, 353 (2d Cir. 1998) ("equivocal" denials do not support a claim of equitable tolling); *cf. also, Center Cadillac v. Bank Leumi Trust Co.*, 808 F. Supp.2d 213, 227 (S.D.N.Y. 1992) (refusal to provide information is precise type of conduct that puts plaintiff on notice and vitiates claim of equitable tolling).[8]

### B.     Plaintiff's Claim is Barred by Laches

Even if this were a case where demand was required, plaintiff's claims would be barred by laches, due to her unreasonable delay in making her demand. In this regard, plaintiff does not dispute that in June 2004, while her suit against Mr. Brandhorst for child support was pending, she got a copy of her July 2002 wire instructions from Mr. Brandhorst, for the purpose of discussing it with counsel. *See* AC Ex. 2; Brandhorst Mov. Dec. ¶ 22-23. Plaintiff also does not dispute that she then silently and deliberately sat on her rights for another three years, during which time Mr. Brandhorst continued to hold on to the Works and to make substantial payments to her. This, on its face, is the definition of laches. *See generally,* Def. Mov. Memo. pp. 12-13, *and cases cited therein.*

---

[8] *Farkas v. Farkas*, 168 F.3d 638 (2d Cir. 1999), the only case plaintiff cites, is not to the contrary. In *Farkas*, the Second Circuit recognized that equitable tolling cannot apply unless a party intentionally or carefully conceals a conversion. *Id.* at 642. The *Farkas* court focused on evidence that a husband and his mother had used phony financial transactions to intentionally disguise the fact that the proceeds of the sale of certain marital property had been converted by the mother, and not used for marital purposes. *Id.* at 642-44. No such allegations are made here because conduct of that sort did not happen.

8

696214.5.

Plaintiff's first response is that Mr. Brandhorst suffered no prejudice because the value of the works allegedly "skyrocketed" during this time. This is specious. Indeed, it only increases the prejudice to Mr. Brandhorst, because plaintiff is now laying claim to the full, appreciated value of the Works, years after Mr. Brandhorst took possession of them with the understanding that he owned them free and clear.

Plaintiff next argues that Mr. Brandhorst was not prejudiced – even though she concedes that he transferred approximately $3.5 million to plaintiff over six years – because he told the Family Court that these were "voluntary" payments. As more fully set forth in footnote 2, *supra*, plaintiff seems to be deliberately missing the point. At every step of the way, during and after the parties' personal relationship, and at least from the time that Mr. Brandhorst transferred approximately $1 million to Ms. Kapernekas' bank account, Mr. Brandhorst has been extraordinarily and voluntarily generous in providing money for plaintiff and her children (including her son, Orestes), well-beyond the scope of any conceivable legal obligation. Since 2002, Mr. Brandhorst has continued this generosity with direct monthly payments, while operating under the reasonable belief that plaintiff had voluntarily returned his prior lump-sum transfer as part of the substitute arrangement. Plaintiff's argument that she saw no reason to sue for the Works while Mr. Brandhorst continued to make his payments manifestly demonstrates the prejudice – plaintiff deliberately sat silent for almost six years, to avoid killing the goose while he was laying the golden eggs. Having made her choice, and having silently accepted the monthly payments, which more than satisfied the amount he was to pay her under the substitute arrangement, plaintiff is bound by it, and her claims are barred by laches as a matter of law.

**Conclusion**

For all of the reasons stated herein and in defendant's original motion papers, the Amended Complaint should be dismissed with prejudice and in its entirety.

Dated: New York, New York
      July 3, 2008

Respectfully submitted,

WITHERS BERGMAN LLP

By: ___/s/ Hollis Gonerka Bart____
    Hollis Gonerka Bart (HB-8955)
    Chaya F. Weinberg-Brodt (CW-4676)
    430 Park Avenue
    New York, New York 10022
    (212) 848-9800
    Attorneys for Defendant
    Udo Fritz-Hermann Brandhorst

10

696214.5.